Van Allen Beaver, Plaintiff-in-Error,

*v.*

State of Tennessee, Defendant-in-Error.

398 S.W.2d 261.

(*Jackson,* April Term, 1965.)

Opinion filed January 5, 1966.

WALKER GWINN, Public Defender, Memphis, for plaintiff in error.

GEORGE F. McCANLESS, Attorney General, EDGAR P. CALHOUN, Assistant Attorney General, for defendant in error.

MR. JUSTICE CHATTIN delivered the opinion of the Court.

Plaintiff-in-error, Van Allen Beaver, hereinafter referred to as defendant, was indicted, tried and convicted

of the crime of robbery and sentenced to a term of not more than ten years in the State Penitentiary.

Defendant has appealed and the matter is in this Court on the technical record and a narrative bill of exceptions.

Ember Smith was employed as an attendant at a service station located at Calhoun and Third Streets in the City of Memphis. The station was operated by the Spur Oil Company. On October 30, 1964, Smith's shift was from eleven P.M., until seven A.M., the next morning. About one A.M., a colored man came to the station and stated he wanted a quart of oil. When Smith went into the station to get the oil, the defendant followed him and hit him in the head. He did not know what defendant hit him with. Defendant took $45.00, Smith's billfold and driver's license. He also took a money changer from Smith.

Smith later called the Police and gave them a description of the defendant. He saw the defendant on November 9, 1964, at the Police Headquarters and identified defendant as being the robber. He also identified the money changer and billfold taken from him the night of the robbery. These items had been found in defendant's apartment by officers pursuant to a search.

Alando Boyd, a Police Officer, went to the service station about one thirty A.M., and talked with Smith who had a knot on his head. He saw spots of blood on the floor of the station.

Lieutenant Donald W. Williams testified he and another officer of the Memphis Police Department arrested defendant on November 8, 1964, on another complaint.

When he was told he was under arrest for investigation, defendant told the officers he had been in the penitentiary and knew his rights; and that before the

officers could arrest him, he would either hurt them or they would have to hurt him. They had considerable trouble in making the arrest.

After the arrest, a search warrant was obtained and read to the defendant. The officers searched defendant's apartment and found the billfold and money changer which were later identified by Smith.

Lieutenant Williams further stated that after finding the money and billfold, he and Inspector Zachary questioned defendant in the presence of Smith on November 10, 1964. He stated prior to questioning defendant he was advised that he did not have to make a statement and that anything that he might say might be used against him in court.

Counsel for defendant objected to the admissibility of defendant's confession. The trial judge promptly excused the jury and heard the following testimony which was ruled admissible by the court and later related by Lieutenant Williams to the jury.

Williams stated he advised defendant he did not have to make a statement, but did not advise him he had a right to Counsel before making the statement.

He further stated defendant admitted he robbed Smith. That defendant stated he went into the station and when Smith turned his head he hit him with his fist. He then took two billfolds from Smith's pocket, the money and the money changer from his belt.

Anna Davis testified defendant rented the apartment from her. To her knowledge the defendant did not work. She was at home when the officers searched defendant's apartment. They read the search warrant to her. She

went into the apartment with them and the wallets were on the floor but she did not see the money changer.

The defendant testified in his own behalf and denied he robbed Smith. He stated he was at the Club Handy on the night of the robbery from nine P.M., until four A.M., the next morning.

On cross examination he testified he had served nine months for larceny, fifty-nine days for interstate theft, and had received a sentence of three years for forgery. He also stated the Police mistreated him but he did not confess nor admit the robbery. He was asked the names of the people he was with at Club Handy on the night of the robbery and he replied: "I have forgotten."

Defendant insists it was error for the trial judge to permit the introduction of the evidence relative to defendant's confession before the jury. It is the contention of defendant the confession was inadmissible because he was not advised of and did not waive his constitutional right to Counsel before the statement was taken.

Counsel for defendant argues, since Smith had identified Beaver as the man who robbed him and the billfold and money changer had been found in Beaver's apartment and identified, the case against defendant had shifted from the investigatory to the accusatory stage, and it was a violation of his constitutional rights to fail to advise defendant of his right to Counsel in the absence of a waiver of his right to Counsel. Counsel relies upon the cases of *Escobedo v. State of Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977; *Campbell v. State,* 215 Tenn. 95, 384 S.W.2d 4 (1964); and *United States ex rel. Russo v. State of New Jersey,* 351 F.2d 429 (3 Cir. 1965).

452

■ It has long been the rule in this State the admissibility of a confession in a criminal case is a preliminary question to be determined by the trial judge. He must first determine there is credible evidence a confession has been made and whether it was made freely and voluntarily. *Self v. State,* 65 Tenn. 244 (1877) ; *Wynn v. State,* 181 Tenn. 325, 181 S.W.2d 332 (1944).

■ The failure of officers to advise one arrested for a crime he is entitled to Counsel and to remain silent are circumstances to be considered by the trial judge in determining the voluntariness of a confession. *Hickson v. State,* 196 Tenn. 659, 270 S.W.2d 313 (1954) ; *Cordell v. State,* 207 Tenn. 231, 338 S.W.2d 615 (1960).

■ If the one charged with a crime freely and voluntarily confesses to the charge without inducement, coercion or fear, he has not been fundamentally prejudiced, and by voluntarily making the statement he has waived his right to Counsel and to remain silent, although he has not been advised of these rights by the officers.

In the case of *Haynes v. State of Washington,* 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963), the Supreme Court of the United States said:

"* * * '[T]he question in each case is whether the defendant's will was overborne at the time he confessed,' *Lynumn v. [State of] Illinois,* 372 U.S. 528, 534, 83 S.Ct. 917, 920, 9 L.Ed.2d 922. 'In short, the true test of admissibility is that the confession is made freely, voluntarily, and without compulsion or inducement of any sort.' (Citing authority). And, of course, whether the confession was obtained by coercion or improper inducement can be determined only by an examination of all the attendant circumstances."

■ Unless the evidence heard by the trial judge at the preliminary hearing preponderates against the trial judge's finding the confession was freely and voluntarily given, this Court cannot say the trial judge erred in admitting it into evidence. *Taylor v. State,* 191 Tenn. 670, 235 S.W.2d 818 (1950).

We do not think the Escobedo case has changed the foregoing rules or procedure. Nor do we think it is authority for the argument that no statement can be admitted as evidence in a criminal proceeding made by a defendant, after he has been arrested and charged with having committed a crime, tending to incriminate himself without being advised before making the statement he is entitled to Counsel. The decision in Escobedo was expressly limited to the facts of the case.

The specific holding in that case was:

"We hold, therefore, that where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in volation of the sixth amendment to the constitution as 'made obligatory upon the States by the Fourteenth Amendment,' *Gideon v. Wainwright,* 372 U.S. [335], at 342, 83 S.Ct. [792], at 795 [9 L.Ed.2d 799] and no statement elicited by the police during the interrogation may be used against him at a criminal trial."

This holding was approved by this Court in the case of *Campbell v. State,* supra. It is plain from reading the Escobedo case Escobedo was not advised by the officers of his constitutional right to remain silent. It is also clear Escobedo requested Counsel and was denied that right prior to making the statement.

. In the Russo case, the Court in finding the confession inadmissible said:

"As to Russo, were we confronted only with the police activity at the police station we could conclude without difficulty that Russo's statement there made, the equivalent of a confession, was voluntary. But we have more. There was a questioning of Russo at the hospital, the crucial portion of which was conducted by the two police detectives shortly after the operation had been performed and when he was shackled by his ankle to his bed. Russo admitted, as stated previously, his active participation in the attempted holdup. Interrogation of Russo under the circumstances seems repugnant to concepts of fairness. In addition there is the psychiatric testimony tending to show that Russo was susceptible to suggestions and unable to relate his present actions to future consequences. There is the additional problem that even when he was questioned at the police station Russo was in a weakened condition and his arm was still in a sling. These factors, when combined with the lack of any warning to Russo as to his constitutional safeguards to which he was entitled and his illegal detention, could create an inference that the confession was the product of an overborne mind."

The Russo case also recognizes the rule a defendant may intelligently waive his right to Counsel, although at

the time the confession is made the investigation has reached the accusatory stage.

In the instant case, the defendant told the officers when they arrested him he had been in court before and knew his rights. He was advised before making his statement he had the right to remain silent, but was not advised of his right to Counsel. He did not request Counsel nor was he denied Counsel. There is not one shred of evidence in this record that his statement was induced by hope or fear, or any other illegal means. The defendant testified he did not make the statement to the officers. His defense was an alibi. These issues were decided against him by the trial judge and the jury.

■ From the record before us, we are unable to say the evidence preponderates against the finding of the trial judge the confession was voluntary and admissible into evidence. Nor do we think the evidence preponderates against a finding the defendant intelligently waived his right to Counsel.

■ We have been unable to find any authority holding the mere fact that investigating officers failed to advise one charged with a crime he is entitled to Counsel before making an incriminating statement to them ipso facto renders the confession involuntary and inadmissible in evidence.

Defendant's second assignment is the evidence preponderates against the verdict of the jury and in favor of his innocence.

To dispose of this assignment, we need only to quote the following from defendant's brief:

"It is regrettable that the Police Officers went to such lengths and used such tactics to obtain a confession

when the independent proof obtained prior thereto was so overwhelming and the confession was unnecessary to obtain a conviction.''

Thus, defendant admits that the evidence does not preponderate against the verdict and in favor of his innocence.

The assignments are overruled and the judgment of the trial court is affirmed.

BURNETT, CHIEF JUSTICE, and WHITE, DYER and CRESON, JUSTICES, concur.